## M. Donahoo *v.* R. T. Grigsby.

**Contracts—Temporary Mental Disability—Drunkenness.**

The appellee had taken one or two drams that morning, and although the lawyer who wrote the contract of sale, and others who saw him that morning did not discover that he was under the influence of liquor or incapacitated to make such a trade, still there was no doubt but what he was still laboring under the effects of his debauch and was in such a condition of mind as to be entirely reckless, not only in regard to his estate, but to every sense of moral duty. The bargain was unconscionable.

APPEAL FROM NELSON CIRCUIT COURT.

October 25, 1871.

OPINION BY JUDGE PRYOR:

The appellee, a young man, reckless and intemperate in his habits and frequently indulging in the use of intoxicating liquors to such an extent as to render him for days and weeks incapacitated to transact business, sold to the appellant his estate then in the hands of his father, as statutory guardian, of the value of about $2,200.00, and some personal property of value, for the sum of nine hundred dollars, eight hundred dollars of which was paid in money and the balance in a watch. For some days previous to this sale and up to the evening preceding it, the appellee had been indulging in one of his drunken frolics and during this time was making constant endeavors to dispose of his property, declared his intention of selling it, if for only one hundred dollars.

W. Johnson, a witness, who was the executor of the will of the appellee's uncle, under which he had derived the property and being familiar with its character and value, says, that on the

evening before the sale was made the appellee came to his office beastly drunk and incompetent to transact any business, and proffered to sell his estate to him; that he was then offering to take a great deal less than it was worth, and the witness, in order to dissuade him from sacrificing his property, proposed to him to give him the next morning, if it was not then sold, the sum of $2,000.00 for it, and although the witness says he made the offer more to prevent him from selling than anything else, still he would have given him the $2,000.00. The appellee declined to sell unless he could then dispose of it. On the next morning after the conversation with Johnson, the appellee and the appellant are found at the residence of appellee's father who lived a short distance from Bardstown, and the mother is informed by the appellee that he has sold to appellant his property for $2,000.00. The appellant was then informed by the mother and father that he was in no condition to trade, and the mother made inquiry of the appellant to know if he was to give the appellee $2,000.00, and suggested that she was to get $1,000.00 of the money. To this suggestion of the mother appellant made no response and returned to town with the appellee and had the contract of sale written. The appellee had taken one or two drams that morning, and although the lawyer who wrote the contract and others who saw him that morning did not discover that he was under the influence of liquor or incapacitated to make such a trade, still there is no doubt but what he was still laboring under the effects of his debauch and was in such a condition of mind as to be entirely reckless, not only in regard to his estate but to every sense of moral duty. The bargain was and is unconscionable. It was the duty of the appellant to have disclosed to the mother who was urging him not to trade with her son on account of his condition the real nature of the contract between them. The son, in his demented condition result-ing from his recent dissipation, imposing upon the mother by false statements and the recipient of the speculation by his silence acquiescing in the statements.

The judgment of the court below is affirmed on the original and reversed on the cross-appeal with directions to the court below to refer the case to a commissioner for the purpose of ascertaining the personal property, if any, and its value sold by

the appellant under this contract, and when ascertained, the value to be credited on the sum required by the judgment to be refunded the appellant by the appellee.

*McKay, for appellant.*

*Johnson, Grigsby, for appellee.*